# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VBR TOURS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 14-cv-804 |
| ) | |
| NATIONAL RAILROAD PASSENGER ) | Judge Robert M. Dow, Jr. |
| CORP. and YANKEE LEISURE ) | |
| GROUP, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff VBR Tours, LLC ("VBR") brings suit against Defendants National Railroad Passenger Corp. ("Amtrak") and Yankee Leisure Group, Inc. ("Yankee") (collectively, "Defendants") for alleged violations of Sections 1 and 2 of the Sherman Act and the Illinois Antitrust Act. On January 15, 2015, the Court granted Defendants' motion to dismiss VBR's complaint for failure to state a claim. See [46]. On September 28, 2015, the Court denied VBR's motion for reconsider of the Court's dismissal order, but granted VBR until October 26, 2015 to file a motion for leave to file an amended complaint, if VBR believed that it could overcome the deficiencies identified in the Court's orders. See [62]. On October 26, 2015, VBR filed a motion for leave to file an amended complaint. See [64] (motion); [64-1] (proposed amended complaint). Defendants oppose VBR's motion on the basis that amendment would be futile. See [71], [72], [73]. For the reasons explained below, the Court denies VBR's motion [62] for leave to file an amended complaint. The Court will allow VBR one more opportunity to consider whether it believes that it can cure the deficiencies identified above (and in the Court's prior opinions) through the filing of an amended complaint. If VBR wishes to file another

motion for leave to file an amended complaint, it should file the motion, along with a copy of the proposed amended complaint, by 10/14/2016. This case is set for further status hearing on 10/20/2016 at 9:00 a.m. If VBR does not wish to seek leave to replead, it may so advise the Courtroom Deputy, in which case the Court will enter a final judgment under FRCP 58 and strike the October 20 status hearing.

**I.**     **Background[1]**

VBR's original complaint [1] is outlined in detail in the Court's January 15, 2015 order, knowledge of which is assumed here. See [46]. In its prior order, the Court concluded that VBR's claims for violation of §§ 1 and 2 of the Sherman Act and the Illinois Antitrust Act must be dismissed because Plaintiff failed to allege an antitrust injury based on predatory pricing. The Court explained that VBR did not allege that Amtrak is pricing its tickets below cost or that Amtrak has a reasonable prospect or dangerous probability of recouping its alleged investment in below-cost prices. [46] at 9. The Court also pointed out that VBR did not provide any examples of potential competitors who tried and failed to enter the market or existing competitors who left the market. *Id*. The Court concluded that VBR failed to allege an antitrust injury, because it did not allege that Defendants' anticompetitive acts reduced output or raised prices to consumers. [46] at 10.

VBR moved for reconsideration. On reconsideration, the Court reaffirmed its prior decision and also concluded that VBR failed to make plausible allegations of anticompetitive conduct under any of four "refusal to deal" theories: (a) predatory pricing; (b) denial of access to an essential facility; (c) *Aspen Skiing*; or (d) exclusive dealing. See [62].

---

[1] For purposes of this order, the Court assumes that all well-pled allegations in Plaintiff's proposed First Amended Complaint [64-1] are true. This order cites to the redline of the First Amended Complaint, which Yankee attached to its motion to dismiss, see [72-1], because the redline makes it easier to identify which allegations VBR has added to the original complaint.

VBR now seeks leave to file an amended complaint for attempted monopolization in violation of § 2 of the Sherman Act and the Illinois Antitrust Act (Counts I and IV, respectively) and conspiracy to monopolize in violation of § 2 of the Sherman Act and the Illinois Antitrust Act (Counts II and V, respectively). VBR also alleges a claim for violation of § 1 of the Sherman Act, but only for the purposes of preserving the claim for appeal. See [72-1] at 36.

## II.     Legal Standard

A motion for leave to file an amended complaint should "freely" be granted "where justice so requires." Fed. R. Civ. P. 15(a)(2). "This liberal policy of granting amendments is based in part on the belief that decisions on the merits should be made whenever possible, absent countervailing considerations." *Olech v. Vill. of Willowbrook*, 138 F. Supp. 2d 1036, 1040 (N.D. Ill. 2000) (citation omitted). Leave to amend should be given "'[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment.'" *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (quoting *Foman v. Davis*, 371 U.S. 178 (1962)). Ultimately, "'[t]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court.'" *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (quoting *Brunt v. Serv. Employees Int'l Union,* 284 F.3d 715, 720 (7th Cir. 2002)).

The filing of an amended complaint is futile if it would not withstand a motion to dismiss. *Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 869 (7th Cir. 2013). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ.

3

P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago,* 631 F.3d 823, 832 (7th Cir. 2011).

**III.     Analysis**

Plaintiff's attempted monopolization/refusal to deal claim (Count I) and conspiracy to monopolize claim (Count II) are both brought pursuant to § 2 of the Sherman Act. Count I is brought against Amtrak only, and Count II is brought against both Amtrak and Yankee.

To succeed on its attempted monopolization claim against Amtrak, Plaintiff must show "(1) specific intent to achieve monopoly power, (2) predatory or anticompetitive conduct directed to accomplishing this unlawful purpose, and . . . , (3) a dangerous probability that the attempt to monopolize will be successful." *Indiana Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1413 (7th Cir. 1989); see also *Thompson's Gas & Elec. Serv., Inc. v. BP Am. Inc.*,

691 F. Supp. 2d 860, 867 (N.D. Ill. 2010). To succeed on its conspiracy to monopolize claim against Amtrak and Yankee, VBR "must prove 1) the existence of a combination or conspiracy, 2) overt acts in furtherance of the conspiracy, 3) an effect upon a substantial amount of interstate commerce[,] and 4) the existence of specific intent to monopolize." *Great Escape, Inc. v. Union City Body Co.*, 791 F.2d 532, 540–41 (7th Cir. 1986); see also *Hackman v. Dickerson Realtors, Inc.*, 746 F. Supp. 2d 962, 967 (N.D. Ill. 2010). Under these standards, both of VBR's Sherman Act claims must be supported by plausible allegations of anticompetitive conduct. In addition, both claims must be supported by plausible allegations of an antitrust injury.

### A. Anticompetitive Conduct

"As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 448 (2009). The Supreme Court and the Seventh Circuit have recognized several limited exceptions to this rule, four of which are discussed by the parties in their briefs.

#### 1. Predatory Pricing

First, the Supreme Court has held that "firms may not charge 'predatory' prices—below-cost prices that drive rivals out of the market and allow the monopolist to raise its prices later and recoup its losses." *Pacific Bell Telephone Co. v. Linkline Communications, Inc.*, 555 U.S. 438, 448 (2009). When a "claim alleges predatory pricing under § 2 of the Sherman Act," there are "two prerequisites to recovery." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222 (1993). "First, a plaintiff seeking to establish competitive injury resulting from a rival's low prices must prove that the prices complained of are below an appropriate measure of its rival's costs." *Id*. Second, the plaintiff must demonstrate that "that the competitor had . . . a

5

dangerous probability[] of recouping its investment in below-cost prices." *Id.* at 224; see also *Linkline*, 555 U.S. at 448 ("we have ruled that firms may not charge 'predatory' prices—below-cost prices that drive rivals out of the market and allow the monopolist to raise its prices later and recoup its losses"). The rationale for these requirements is that, "[f]or the investment to be rational," the competitor "must have a reasonable expectation of recovering, in the form of later monopoly profits, more than the losses suffered." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). In other words, "predatory-pricing plaintiffs" must demonstrate that "there is a likelihood that the predatory scheme alleged would cause a rise in prices above a competitive level that would be sufficient to compensate for the amounts expended on the predation, including the time value of the money invested in it." *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312, 319-20 (2007).

In its proposed amended complaint, VBR alleges that the price Amtrak charges Yankee for tickets is "predatory" because "[e]very dollar that Amtrak steers Yankee's way causes Amtrak to fall further below Congress' profitability mandate and increases its costs of providing the service that it is congressionally-mandated to provide." [72-1] at 12; see also *id.* at 24, 30. VBR also alleges that, by providing Yankee with a 19% commission, Amtrak "provides tickets to Yankee at a price further below its cost than it does to any other tour operator in the rail tour operator market." [72-1] at 30. VBR does not allege that the prices that *Yankee* charges are predatory.

VBR further alleges that there is a dangerous probability of Amtrak "recouping the loss it is taking on the predatory price at which it is selling tickets to Yankee through at least three avenues." [72-1] at 30. According to VBR, Amtrak will be able to expand its brand to the exclusion of other tour operators, which will allow Amtrak to: (1) make "increased sales in the

6

price-regulated railway leisure ticket market"; (2) "increase its passenger ridership figures," which will in turn allow Amtrak to "receive more federal funding and subsidies from the federal government"; and (3) cancel its contract with Yankee, "take over operation of its Amtrak Vacations brand itself" and thereby "expand[] its monopoly . . . into the unregulated rail tour operator market." [72-1] at 30-31.

The Court concludes that these additional allegations are insufficient to state a predatory pricing claim under Section 2 of the Sherman Act. VBR's allegations concerning Amtrak's costs are perfunctory at best, because they are based solely on the fact that Amtrak has operated at a loss over the years. But the Court need not decide whether VBR has adequately alleged that Amtrak is pricing its tickets to Yankee below its costs, because VBR has not plausibly alleged that Amtrak will be able to recoup the loss it is allegedly taking by pricing its tickets so low.

VBR's first and third theories—that Amtrak will recoup its losses by selling more railway tickets through Yankee or by cutting out Yankee and taking over Amtrak Vacations itself—are not plausible. Amtrak could not recoup its losses by selling more railway tickets to Yankee or more vacation packages directly to customers unless Amtrak substantially increased its prices—either its wholesale prices to Yankee or its package rates to customers—to well above its costs. If Amtrak were to raise those prices for long enough to recover the billions of dollars that VBR alleges Amtrak has lost (see [72-1] at 8), this would allow other players in the market to compete by combining Amtrak tickets purchased at retail price with the other components of a travel package. In short, the alleged predatory pricing scheme would not plausibly allow Amtrak "recoupment of losses during a sufficiently long period of monopoly pricing." *Ashkanazy v. I. Rokeach & Sons, Inc.*, 757 F. Supp. 1527, 1538 (N.D. Ill. 1991); see also *Brook Grp.*, 509 U.S. at 225-26 (explaining that predators "must obtain enough market power to set higher than

7

competitive prices, and then must sustain those prices long enough to earn in excess profits what they earlier gave up in below-cost prices").

VBR's second theory of recoupment is not plausible, either. The proposed amended complaint gives no suggestion as to how Amtrak's sale of tickets to Yankee at below cost will allow it to "increase its passenger ridership figures," which according to VBR would allow Amtrak to receive more federal funding. [72-1] at 30-31. This conclusory allegation is also inconsistent with VBR's allegations that the price of Amtrak tour packages has gone up and that the number of available tours (output) has gone down as a result of Defendants' alleged conduct. For these reasons, the Court concludes that VBR has not alleged a Sherman Act § 2 claim based on predatory pricing.

### 2. Denial of Access to an Essential Facility

The Seventh Circuit has held that "[a] refusal to deal in the context of an essential facility violates section 2 [of the Sherman Act] because control of an essential facility can extend monopoly power from one stage of production to another, and from one market into another." *Fishman v. Estate of Wirtz*, 807 F.2d 520, 539 (7th Cir. 1986) (quotation marks and citation omitted). The Supreme Court has not expressly recognized or repudiated this essential facilities doctrine. See *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 411 (2004). It made clear in 2004, however, that "the indispensable requirement for invoking the doctrine is the *unavailability of access* to the 'essential facilities.'" *Id*. (emphasis added). "Where access exists"—as it did in *Trinko* by virtue of the Telecommunications Act of 1996— "the doctrine serves no purpose." *Id*. (holding that "Verizon's alleged insufficient assistance in the provision of service to rivals is not a recognized antitrust claim under this Court's existing refusal-to-deal precedents," where access to facilities was available pursuant to the

Telecommunications Act of 1996); see also *United Asset Coverage, Inc. v. Avaya Inc.*, 409 F. Supp. 2d 1008, 1049 (N.D. Ill. 2006) ("[T]he absolute refusal to deal that the essential facilities doctrine appears to contemplate is not present here.").

With this limitation in mind, Seventh Circuit "case law sets forth four elements necessary to establish liability under the essential facilities doctrine: (1) control of the essential facility by a monopolist; (2) a competitor's inability practically or reasonably to duplicate the essential facility; (3) the denial of the use of the facility to a competitor; and (4) the feasibility of providing the facility." *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1132–33 (7th Cir. 1983).

In this case, the third element is dispositive. In its proposed First Amended Complaint, VBR alleges on information and belief that Yankee has been receiving a 19% commission from Amtrak since 2010. See [72-1] at 16, ¶¶ 50-51. VBR further alleges that, in November 2013, Amtrak cut the commissions it paid to all travel and tour agents—except Yankee, Vacations.com and the American Automobile Association ("AAA")—from 8% to zero. According to VBR, "Amtrak's decision to continue paying a 19% commission to Yankee as its exclusive national tour operator, while eliminating the direct payment of commission to Yankee's competitors, has made the terms by which VBR and other tour operators can access railway leisure tickets so unreasonable that it is the functional equivalent of refusing to deal with them." [72-1] at 29 (emphasis added). VBR further alleges that, as a result of Amtrak's pricing, "VBR and other tour operators' exit from the tour operator market is imminent" and, "upon information and belief, one tour operator already has completely left the market." [72-1] at 30.

The parties dispute whether these allegations are sufficient to support a Sherman Act claim based on Amtrak's denial of use a facility (the tickets) to tour operators other than Yankee.

VBR points to *Fishman* for the proposition that "[a]greeing to deal on unreasonable terms"—here, refusing to pay direct commission to VBR and other tour operators other than Yankee—"is merely a type of refusal to deal." 807 F.2d at 541. In *Fishman*, the Seventh Circuit upheld a verdict for plaintiffs Illinois Basketball, Inc. ("IBI") and Marvin Fishman on their claim that defendants Arthur Wirtz and the Chicago Stadium Corporation ("CSC") violated Section 1 of the Sherman Act by agreeing with defendant Chicago Professional Sports Corporation ("CPSC") to withhold access to the Chicago Stadium from IBI. CPSC argued that it did not deny IBI access to the Chicago Stadium, because it offered IBI a lease subject to a number of extremely onerous terms, including a ten-year guarantee. *Id*. at 541. The Seventh Circuit, while noting that "[a]greeing to deal on unreasonable terms is merely a type of refusal to deal," also determined that there was "sufficient evidence in the defendants' correspondence . . . to support the conclusion that the [defendants] agreed to withhold the Chicago Stadium from the plaintiffs and grant a lease only to" CPSC. *Id*. In this case, by contrast, VBR acknowledges that Amtrak has not withheld tickets from tour operators other than Yankee. Nor has *Yankee* withheld Amtrak tickets from other tour operators; instead, Yankee has agreed to pay other tour operators a commission when they resell Amtrak tickets.

The Court concludes that, taken as a whole, the proposed Amended Complaint does not plausibly allege that Amtrak's arrangement with Yankee constitutes the functional equivalent of a refusal to sell tickets to VBR and other tour operators who wish to bundle the tickets to sell in Amtrak tour packages. Amtrak has no legal duty to provide tickets to tour operators at a wholesale rate, nor does the Sherman Act require Amtrak to provide tickets to all tour operators at exactly the same rates. As the proposed Amended Complaint acknowledges, Amtrak sought to have one tour operator provide sales and support services on behalf of Amtrak's travel

10

services, in exchange for a commission. While Yankee questions whether Amtrak got the best deal for these services and whether Yankee is complying with all of its duties under the contract, the bottom line is that Amtrak still makes its tickets available to VBR and other tour operators in a number of ways—at retail, through Yankee (with the tour operator receiving an 8-10% commission), and through Vacations.com (with the tour operator receiving a 10-12% commission).

VBR also argues that Amtrak should be held to an elevated standard because it is a price-regulated monopolist trying to project its monopoly into another market to capture more surplus. See [72-1] at 6-8, 27-28; see also *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370, 374 (7th Cir. 1986). However, while VBR alleges that Congress regulates and has oversight of Amtrak, it does allege any facts suggesting that Amtrak's *prices* are set by law. The exception for price-regulated monopolists is intended to prevent a monopolist whose prices are set by law (for instance, a phone company whose local rates are capped by public utility regulation) from extending its monopoly to, essentially, circumvent the law to capture undeserved profits in another market. That theory is not applicable here.

      **3.**     *Aspen Skiing*

In *Aspen Skiing*, the Supreme Court created a limited refusal-to-deal exception located "at or near the outer boundary of § 2 liability." *Trinko*, 540 U.S. at 399 (citing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 608 (1985)). Upon review of the proposed amended complaint, the Court concludes that VBR has not adequately addressed the pleading deficiencies that the Court previously identified in VBR's *Aspen Skiing* theory. See [62] at 13-17. Unlike the plaintiff in *Aspen Skiing*, VBR is still able to buy tickets from Amtrak at retail price. VBR is also able to purchase tickets through Yankee or Vacations.com and receive a

11

commission. Moreover, by attaching Yankee and Amtrak's contract to the complaint, VBR has pled valid business reasons for the contract, including that Yankee provides services such as developing and operating Amtrak Vacations. Thus, VBR has not plausibly alleged that Amtrak's contract with Yankee is "irrational but for its tendency to harm competition." *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1076 (10th Cir. 2013); see also 3B Phillip E. Areeda & Herbert Hovenkamp, ANTITRUST LAW ¶ 772, at 223 (3d ed. 2008) (the refusal must be "irrational" but for its anticompetitive tendencies).

### 4. Exclusive Dealing

Exclusive dealings violate the Sherman Act "only when they foreclose competition in a substantial share of the line of commerce at issue." *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 736 (7th Cir. 2004). The Court concludes that VBR's exclusive dealing theory is deficient for the same reason previously identified: Amtrak is not dealing exclusively with Yankee. See [62] at 23-26. Amtrak makes its tickets available to all tour operators directly at retail price. Amtrak tickets are also available indirectly through Yankee and Vacations.com, with the tour operator receiving a commission. In addition, Amtrak has not increased its surplus by hiring Yankee and paying it in the form of an exclusive commission. Amtrak could have accomplished the same effect by acquiring a tour operator or creating its own in-house tour operator. See *E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 29-30 (2d Cir. 2006).

### B. Antitrust Injury

To state an antitrust claim under the Sherman Act, a private plaintiff must allege "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990) (quotation marks omitted). A plaintiff must show that its losses come from anticompetitive acts

that (1) "raise prices to consumers"; or (2) "reduce output." *Stamatakis Indus., Inc. v. King*, 965 F.2d 469, 471 (7th Cir. 1992). The Court considers these two types of antitrust injury in turn.

In its proposed First Amended Complaint, VBR alleges that, as a result of Amtrak and Yankee's achieving monopoly power, "tour operators like VBR are no longer able to lower their prices, resulting in Yankee being able to set monopolist prices that are higher than what they would be in a fully competitive market." [72-1] at 34. The Court concludes that this is not a plausible theory of antitrust injury. If Yankee is (as VBR alleges) paying too-low a wholesale price for Amtrak's tickets, and Yankee is also increasing the prices of its package deals, then this must mean that Yankee is pricing the other components of its packages too high—in which case VBR and other tour operators should be able to compete by buying tickets at retail and combining them with the other components of the packages.

VBR also attempts to plead a "reduced output" theory of antitrust injury. VBR alleges that, as a result of Amtrak and Yankee achieving monopoly power, "Amtrak Vacations has decreased by over two-thirds its escorted tour offerings," which constitutes decreased output in the market." [72-1] at 34. VBR further alleges that Amtrak and Yankee's monopolization of the tour operator market will continue to harm competition by forcing all other competitors out of the market. [72-1] at 35. According to VBR, it "currently offers consumers dozens of escorted tours," but at some point will be "forced to depart the rail tour market due to Amtrak's anticompetitive conduct." [72-1] at 35. This departure of "VBR and other tour operators" from the tour market is allegedly "imminent," [72-1] at 30, and one tour operator, RMA Travel and Tours, has already been "forced to close its retail office and is no longer selling any Amtrak tours due at least in part to Amtrak's exclusionary conduct," [72-1] at 32.

13

Given the Court's conclusion that VBR fails to allege any anticompetitive conduct, the Court finds it unnecessary to decide whether VBR has plausibly alleged an antitrust injury based on reduced output. Nonetheless, the Court has serious doubts about the sufficiency of VBR's pleadings. While VBR alleges that *Yankee* has substantially cut the number of *guided* tours it offers, and that one tour operator is no longer selling Amtrak tours, this tells the Court nothing about the effect that Amtrak's conduct has had, to date, on the overall market for Amtrak tours. And while VBR concludes that its and other tour operators' departure from the market is "imminent," this allegation appears to be inconsistent with VBR's allegations that Yankee has received a 19% commission from Amtrak since 2010, yet six years later VBR is still offering a dozen escorted tours. See [72-1] at 16, ¶¶ 50-51; 31, ¶ 128.

**C.      Claims for Violation of the Illinois Antitrust Act and § 1 of the Sherman Act**

Illinois law directs courts to "use the construction of the federal law by the federal courts as a guide in construing" the Illinois Antitrust Act "when the wording [of the Act] is identical or similar to that of federal antitrust law." 740 ILCS 10/11. Thus, Illinois Antitrust Act claims "will stand or fall" with federal Sherman Act claims based on the same underlying facts and legal theories. *Int'l Equip. Trading, Ltd. v. AB Sciex LLC*, 2013 WL 4599903, at *3 (N.D. Ill. Aug. 29, 2013). The Court concludes that VBR's claims for violation of the Illinois Antitrust Act (Counts IV and V) must be dismissed for the same reasons as the Sherman Act § 2 claims, because all of the claims are based on the same underlying facts and legal theories.

Finally, the Court concludes that VBR's claim for violation of § 1 of the Sherman Act must be dismissed because that claim does not contain any substantive allegations and has been included in the proposed First Amended Complaint "[f]or purposes of preserving appeal only." [72-1] at 36.

**IV.    Conclusion**

For these reasons, the Court denies VBR's motion [62] for leave to file an amended complaint. The Court will allow VBR one more opportunity to consider whether it believes that it can cure the deficiencies identified above (and in the Court's prior opinions) through the filing of an amended complaint. If VBR wishes to file another motion for leave to file an amended complaint, it should file the motion, along with a copy of the proposed amended complaint, by 10/14/2016. This case is set for further status hearing on 10/20/2016 at 9:00 a.m. If VBR does not wish to seek leave to replead, it may so advise the Courtroom Deputy, in which case the Court enter a final judgment under FRCP 58 and strike the October 20 status hearing.

Dated: September 15, 2016

_____
Robert M. Dow, Jr.
United States District Judge